IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **EZEBUIHE IHUOMA**, | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. 1:20-03759-JMC |
| **COPPIN STATE UNIVERSITY**, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Ezebuihe Ihuoma brings this case under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e-2(a) ("Title VII"), alleging national origin discrimination and retaliation by Defendant Coppin State University during her employment at the university. Presently before the Court is Defendant's Motion for Summary Judgment. (ECF No. 43). The Court has considered Defendant's Motion, Plaintiff's Response in Opposition (ECF No. 46), and Defendant's Reply (ECF No. 49). No hearing is necessary. Loc. R. 105.6 (D. Md. 2021). For the reasons set forth below, Defendant's Motion is GRANTED.

I. **BACKGROUND**

Plaintiff Ezebuihe Ihuoma "is a female and native of Nigeria." (ECF No. 1). She was hired as an Assistant Professor in Coppin State University's ("Defendant" or "University") undergraduate nursing program in August 2009, and is now an Assistant Professor in the graduate nursing program. *Id.* Plaintiff holds a Bachelor of Science degree in Nursing, a Master's Degree in Public Health, a Master's Degree in Community Health, coursework in Global Health and Family Nurse Practitioner, and a "Doctor of Nursing Practice." (ECF No. 46 at 3).

Plaintiff alleges that five years into her employment with the University, she began to receive disparate treatment when Dr. Tracey Murray became the new Dean of the College of

Health Professions. (ECF No. 46 at 3). Plaintiff first notes unequal treatment in 2014 when she was allegedly informed by Dr. Murray that she was not qualified to apply for tenure despite her academic credentials, particularly her doctoral degree. *Id.* By contrast, Plaintiff avers that her American-born colleagues without doctoral degrees were encouraged to apply for, and received, tenure that same year. *Id.* at 4. Plaintiff applied for tenure the following academic year and eventually obtained tenure status in May 2017 as a result of the University's appeal process. (ECF No. 46, Ex. 4). Plaintiff states that she was not awarded a plaque after receiving tenure, though her American-born colleagues received plaques upon receiving tenure in the past. (ECF No. 1).

After receiving tenure, Dr. Murray asked Plaintiff to join the Health Information Management (HIM) Department on numerous occasions beginning in June 2017. (ECF No. 46 at 4). Plaintiff stated that she did not want to transfer departments because she did not have the requisite degree. (ECF No. 46, Ex. 1 at 22). Plaintiff alleges that Dr. Murray then acted through the HIM department chair to assign her a workload similar to employees working within that department without officially initiating a transfer. (ECF No. 46). Plaintiff again resisted and spoke with the Chief Human Resources Officer, Dr. Lisa Early, who assured Plaintiff that she would remain in the nursing department. (ECF No. 46, Ex. 1 at 23).

Plaintiff co-taught a community health course with two American-born women in 2017. (ECF No. 46). The course had a didactic portion and a clinical portion; the American-born professors taught the didactic portion, and Plaintiff co-taught the clinical portion. (ECF No. 46, Ex. 1 at 19). Plaintiff contends that one of the co-professors "blocked" Plaintiff's access to the online instructional tool used for the didactic portion of the course and removed her name from the online platform. *Id.* One co-professor questioned Plaintiff's supervisor, Dr. Danita Tolson, about Plaintiff's denied access to the platform, and the other co-professor insisted that she would

2

make a separate online instructional tool for the clinical portion of the class. *Id.* Plaintiff complained of her lack of access to the instructional tool and eventually the Assistant Provost granted her access. *Id.* at 20.

On November 27, 2017, Plaintiff met with Dr. Leontye Lewis, the Provost and Vice President for Academic Affairs, to complain about her treatment from Dr. Murray and Dr. Tolson. (ECF No. 46 at 5). Plaintiff memorialized her complaints in an email to Dr. Lewis on December 15, 2017. (ECF No. 46, Ex. 3). The email sets forth a timeline concerning Plaintiff's requests to Dr. Murray for certain paperwork necessary for a promotion. (ECF No. 46, Ex. 3). Dr. Lewis responded to Plaintiff's email and stated that she would address the situation with Dr. Murray, but advised that Plaintiff was beyond the promotion deadline and should have submitted her paperwork despite missing contents. *Id.* Dr. Lewis stated that in response to Plaintiff's concerns, she met and discussed these issues with Dr. Murray in a regularly scheduled one-on-one staff meeting. (ECF No. 43, Ex. 4).

On February 3, 2018, Dr. Murray and Dr. Tolson assigned Plaintiff to teach a nutrition class because the originally assigned professor became injured. (ECF No. 46, Ex. 1 at 27). Plaintiff refused to teach the course, telling Dr. Murray and Dr. Tolson that she did not have the training or knowledge to teach the class competently. *Id.* Plaintiff then met with Dr. Lewis, and the Assistant Provost subsequently ensured that Plaintiff did not teach the nutrition course. *Id.*

That same month, Plaintiff alleges that she was denied funding to attend an American Public Health Association conference. (ECF No. 46, Ex. 1 at 28). Plaintiff contends that she filled out and provided paperwork for Dr. Tolson's approval, but it was never approved. (ECF No. 46 at 6).

On March 12, 2018, Plaintiff called Dr. Tolson and told her that she was drowsy from allergy medicine and would not be able to come to work until 12:00pm. (ECF No. 46, Ex. 1 at 31). Plaintiff's normal working hours were between 9:00am to 5:00pm. *Id.* That day, Plaintiff instead worked from 12:00pm to 8:00pm. *Id.* The following day, Dr. Tolson informed Plaintiff that four hours would be docked from her sick leave to account for her tardiness. *Id.* Plaintiff insisted that she worked the full eight hours and that docking her sick leave was inappropriate. *Id.* After emails to various administrative personnel, Dr. Early notified Plaintiff that the University would not dock anything from her hours. (ECF No. 46, Ex. 1 at 31).

Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) on April 25, 2018, alleging employment discrimination under Title VII of the Civil Rights Act and The Americans with Disabilities Act on the basis of national origin, disability, and retaliation. (ECF No. 43, Ex. 3). In her Charge of Discrimination, Plaintiff listed the particulars of her charge: she was assigned to teach a nutrition class, she was denied funding to attend a training, and she was docked four hours of pay. *Id.*

Plaintiff taught a summer course at some point in 2018. (ECF No. 46, Ex. 1 at 35). Because Plaintiff was employed as a ten-month employee, she had to sign a separate contract to teach the summer course. *Id.* Plaintiff says she taught the course and did not "get paid for a very long time." *Id.* Plaintiff notified Dr. Early that she had not been paid, and she was subsequently paid for teaching the course. *Id.* Plaintiff estimates that she was not paid for about a month. (ECF No. 46). There is an unexplained email in the record dated June 8, 2018, with a subject heading "NURS 430.C03 Summer II" in which Plaintiff pleads with Dr. Tolson to stop bullying her. (ECF No. 46, Ex. 5). In that same email, Plaintiff references a conversation with various administrative personnel concerning Dr. Tolson's behavior. *Id.*

In August 2018, Plaintiff states that she asked Dr. Tolson for her "faculty activity report" to submit for a promotional opportunity. (ECF No. 46, Ex. 1 at 36). Dr. Tolson "refused" to give Plaintiff the paperwork, so Plaintiff contacted Dr. Murray. *Id.* Dr. Murray did not respond to Plaintiff's communication. *Id.* Plaintiff says that Dr. Tolson's refusal to provide her with the faculty activity report is "part of the reason" why she was not promoted. *Id.*

Plaintiff filed suit in this Court against the University for alleged discrimination on the basis of national origin and retaliation under Title VII. (ECF No. 1). Defendant has filed the instant Motion for Summary Judgment, arguing that Plaintiff has failed to establish a prima facie case of discrimination and retaliation. (ECF No. 43). In support, Defendant points to Plaintiff's lack of evidence to substantiate her claims. *Id.* Plaintiff largely reiterates the allegations in her Complaint, and takes issue with her constant need to involve higher-level administration to alleviate her complaints. (ECF No. 46). For the reasons set forth below, the Court finds that Plaintiff has failed to show a prima facie case of discrimination and retaliation, and Defendant is entitled to summary judgment.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v.*

*Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)).

The Court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)). However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck Rental, Inc.*, 962 F. Supp. 2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). Consequently, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998).

The district court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In other words, "in considering a summary judgment motion, the court may not make credibility determinations." *Neal v. United States*, 2022 WL 1155903, at *9 (D. Md. Apr. 19, 2022) (citing *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015)). "Where there is conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility." *Neal*, 2022 WL 1155903, at *9. Conversely, summary judgment is "appropriate when a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *McGhee v. Danzig*, No. CIV AMD 99-3362, 2001 WL 410052, at *5 (D. Md. Apr. 19, 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

### III.   ANALYSIS

As an initial matter, Defendant asserts that Plaintiff's allegations dating more than 300 days before her Charge of Discrimination are time-barred. (ECF No. 43, Ex. 1). Under 42 U.S.C.A. § 2000e-5 (West), when a party institutes discrimination proceedings with a state agency, the charge must be filed "within three hundred days after the alleged unlawful employment practice occurred." "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). A plaintiff may use prior acts as background evidence in support of a timely claim, but "only incidents that took place within the timely filing period are actionable." *Id.* at 114.

Plaintiff filed a Charge of Discrimination on April 25, 2018. (ECF No. 43, Ex. 3). Accordingly, any alleged action that occurred prior to June 29, 2017, is time-barred. Plaintiff may rely on acts prior to that date as background evidence, but she may not recover based on those instances. Plaintiff seemingly does not disagree. As such, the Court will only analyze acts that have occurred since June 29, 2017, and will address Plaintiff's claims in turn.

#### a.  **Discrimination (Count I)**

Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). A plaintiff may establish discrimination under Title VII through two distinct means: (1) through "'direct or indirect'" evidence of discrimination under "ordinary principles of proof"; (2) through the burden-shifting approach first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Angelini v. Baltimore Police Dep't.*, 464 F. Supp. 3d 756, 777–78 (D. Md. 2020).

As originally explained by the Supreme Court, *McDonnell Douglas* established a three-step burden-shifting approach:

> the plaintiff-employee must first prove a prima facie case of discrimination by a preponderance of the evidence. If she succeeds, the defendant-employer has an opportunity to present a legitimate, non-discriminatory reason for its employment action. If the employer does so, the presumption of unlawful discrimination created by the prima facie case drops out of the picture and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination.

*Wang v. Metro. Life Ins. Co.*, 334 F. Supp. 2d 853, 862 (D. Md. 2004) (citing *Mackey v. Shalala*, 360 F.3d 463, 468 (4th Cir.2004)). Despite the burden-shifting nature of this process, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Angelini*, 464 F. Supp. 3d at 778. Plaintiff has not provided any direct or indirect evidence of discrimination, so the Court will analyze the case using the burden-shifting approach.

"[T]he elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. of Appeals of Maryland*, 566 U.S. 30, 132 S. Ct. 1327, 182 L. Ed. 2d 296 (2012).

Defendant argues, and the Court agrees, that Plaintiff cannot prove a prima facie case of discrimination based on a preponderance of the evidence. (ECF No. 43). Defendant concedes that Plaintiff is part of a protected class and had satisfactory job performance; therefore, those elements are satisfied. Defendant instead argues that there were no adverse actions against Plaintiff. "An adverse employment action is one that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Gaines v. Baltimore Police Dep't*, No. CV ELH-

21-1211, 2022 WL 1451629, at *12 (D. Md. May 9, 2022) (citing *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011)) (internal quotations and citations omitted). "[T]he adverse action must have 'occurred under circumstances that raise a reasonable inference of unlawful discrimination ....'" *Id.* (quoting *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 650 (4th Cir. 2021)). "An objective test of 'adversity' applies, and a plaintiff's subjective feelings about the employment action is a necessary, but not a sufficient, evidentiary showing to withstand summary judgment." *McGhee*, 2001 WL 410052, at *8.

Plaintiff asserts that she was discriminated against in five instances: (1) she was originally told to teach a nutrition class; (2) she was belatedly paid for four hours of work; (3) she was belatedly paid for teaching a summer course; (4) she was denied funding to attend a training; (5) she was denied paperwork necessary for a promotion. (ECF No. 46). Defendant argues that each of these scenarios was remedied, or otherwise did not occur. (ECF No. 43, Ex. 1 at 9).

Plaintiff's deposition testimony states that she was told to teach a nutrition class despite lacking what she believed to be the requisite foundational knowledge to teach the class. (ECF No. 46, Ex. 1 at 28). Plaintiff then "let the Vice President of Academic Affairs, the provost, know about it" and the provost "made sure that [she] didn't teach the nutrition course." *Id.* Simply put, there is no "adverse action" for the Court to analyze: Plaintiff did not teach the nutrition course. Plaintiff utilized the hierarchy at the University and the provost "accommodate[ed] her refusal" to teach the course. (ECF No. 49 at 3). As such, Plaintiff's argument here fails.

As for delayed payment for hours worked, Plaintiff's testimony explains that her normal working hours were 9:00am to 5:00pm. (ECF No. 46, Ex. 1 at 31). Plaintiff woke up one morning and told her supervisor that she would arrive at work at 12:00pm because she was unable to drive due to allergy medicine. *Id.* Plaintiff arrived at work at 12:00pm and stayed until 8:00pm. *Id.* The

following day, Plaintiff's supervisor called her and stated that four hours would be docked from her sick leave because she did not attend work in the morning. *Id.* Plaintiff subsequently emailed higher-level administration. (ECF No. 46, Ex. 1 at 31). Upon email receipt, the administration stated that her leave would not be docked. *Id.* Plaintiff takes issue with having to involve the "higher ups" in order to ensure her altered work schedule would not affect her sick leave. Similar to the previous scenario, Plaintiff was not actually docked sick leave or pay, and there is no adverse action to analyze.

Plaintiff testified in her deposition that she was not paid for teaching a summer course for "maybe more than one month." (ECF No. 46, Ex. 1 at 36). Without more, Plaintiff has failed to offer any evidence to substantiate her claim. To be sure, late payment may constitute an adverse action. *See Spearman v. City of Annapolis*, No. CV JKB-21-1779, 2022 WL 316641, at *7 (D. Md. Feb. 1, 2022) ("withholding of Plaintiff's pay is an adverse employment action"). However, here, there is no indication that this timeline is abnormal, that her co-workers were paid quicker, or evidence that payment was actually remitted over a month's period. Plaintiff simply relies on her own testimony and answers to interrogatories, which fall far short of proof by a preponderance of the evidence. *See Artis v. U.S. Foodservice, Inc.*, No. CIV.A. ELH-11-3406, 2014 WL 640848, at *9 (D. Md. Feb. 18, 2014) ("plaintiff proffered mere conjecture, but no evidence, that the incident [] transpired as she alleges"); *see also Martin v. Montgomery Cnty. Pub. Sch.*, 223 F. Supp. 2d 742, 743 (D. Md. 2002) ("on deposition plaintiff … has offered nothing more than his own subjective opinions").

Similar to the above scenarios, Plaintiff's assertion that she was denied funding to attend a training is unsubstantiated. Again, Plaintiff relies solely on her own testimony and answers to interrogatories, and provides no details about the training itself. At this late stage in litigation,

conclusory assertions are not enough. *See Mungro v. Giant Food, Inc.*, 187 F. Supp. 2d 518, 523 (D. Md. 2002) ("Conclusory and hearsay evidence does not provide support sufficient to defeat a summary judgment motion."); *see also Artis*, 2014 WL 640848, at *9 (D. Md. Feb. 18, 2014) ("'Unsupported speculation is not sufficient to defeat a summary judgment motion.'") (quoting *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987)). Plaintiff has offered no evidence about the alleged training, let alone its potential adverse effects to her employment.

Finally, though "reduced opportunities for promotion" may be considered an adverse action, Plaintiff has failed to allege or produce evidence that similarly situated American-born employees were given timely access to their faculty activity report. *See Cepada v. Bd. of Educ. of Baltimore Cnty.*, 814 F. Supp. 2d 500, 510 (D. Md. 2011) (quoting *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir.1999)). Viewed in the light most favorable to Plaintiff, she stated that her supervisor did not provide her faculty activity report which was necessary to apply for a promotion. (ECF No. 46, Ex. 1 at 36). Plaintiff also provided an email exchange with Dr. Lewis concerning the required contents for the promotion packet. (ECF No. 46, Ex. 3). However, Plaintiff has failed to provide evidence that (1) this information was necessary for a promotion and (2) similarly-situated American-born colleagues were granted access to the requested documentation. To the extent that Plaintiff argues her American-born colleagues were promoted in the past, such bald assertion is unsupported by evidence, as is the pattern in this case. *See Martin*, 223 F. Supp. 2d at 744 ("plaintiff has presented no objective evidence that a similarly situated white person … was treated any differently than [s]he, as required by the fourth element of the *McDonnell Douglas* test for establishing a prima facie case"). Alternatively, if Plaintiff's argument refers to her August 2018 request for paperwork, she has similarly provided no evidence or details to elucidate the situation,

and her own testimony contradicts that her missing paperwork was the reason that she was not promoted. (ECF No. 46, Ex. 1 at 36) ("that is part of the reason").

Even in the light most favorable to Plaintiff as the non-moving party, Plaintiff has failed to set forth a prima facie case by a preponderance of the evidence that she was discriminated against on the basis of national origin. "To be sure, the burden is on the moving party to establish its entitlement to summary judgment. But, 'the plaintiff is not thereby relieved of his [or her] own burden of producing in turn evidence that would support a jury verdict.' If the nonmoving party's evidence 'is merely colorable, or is not significantly probative, summary judgment may be granted.'" *Artis*, 2014 WL 640848, at *9 (internal citations omitted). Consequently, there is no genuine dispute as to material fact and Defendant is entitled to summary judgment as a matter of law as to Count I of Plaintiff's Complaint.

### b. Retaliation (Count II)

"The scope of Title VII's anti-retaliation provision, § 2000e-3, is broader than the anti-discrimination provision…." *Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 327 (4th Cir. 2018). "Title VII prohibits an employer from retaliating against a worker for either participating in a Title VII proceeding or opposing an employer's discriminatory practices." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 255 (4th Cir. 1998) (citing 42 U.S.C. § 2000e-3(a)).

To establish a *prima facie* claim of retaliation under Title VII, a plaintiff must demonstrate: (1) that she engaged in a protected activity; (2) that the employer took a materially adverse action against her; and (3) there is a causal connection between the protected activity and the adverse action. *See Perkins v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61–68, (2006) ("*Burlington*") (replacing "adverse employment action" in the second element with "materially adverse action").

> *i. Protected Activity*

Derived from the text of 42 U.S.C. § 2000e-3(a), "protected activity" can be categorized in one of two ways: "participation [or] opposition." *Id.* (citing *Laughlin*, 149 F.3d at 259). "An employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII, nor may the employer take [an] adverse employment action against an employee for opposing discrimination practices in the workplace." *Id.* (citing *Laughlin*, 149 F.3d at 259).

Defendant concedes that Plaintiff engaged in a protected activity when she met with Dr. Lewis on November 27, 2017, to complain that she had been subjected to "ill treatments, harassments, and bullying." (ECF No. 43, Ex. 1 at 11; ECF No 43, Ex. 4). Plaintiff additionally sent a follow-up email detailing the timeline of the alleged "persistent ill treatments" and Dr. Lewis acknowledged her complaints in a response e-mail dated December 17, 2017. (ECF No. 46, Ex. 3). Defendant argues that Plaintiff did not explicitly link the alleged discrimination to her national origin during her conversation with Dr. Lewis, but there is no such requirement. *See Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 336 (4th Cir. 2018) ("When determining whether the employer should have understood the nature of the employee's action, courts examine not just the employee's complaint but also the factual context that is known to the employer."); *see also Okoli v. City of Baltimore*, 648 F.3d 216, 224 (4th Cir. 2011) (finding that it is enough for the affected to complain of mistreatment). Additionally, Plaintiff's complaint with the EEOC on April 25, 2018, is clearly a protected activity. (ECF No. 43, Ex. 3). Plaintiff plainly engaged in various protected activities.

### ii. *Materially Adverse Action and Causal Connection*

The second element—materially adverse action—requires that a plaintiff "show that a *reasonable* employee would have found the challenged action *materially* adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Perkins*, 936 F.3d at 213 (emphasis added) (quoting *Burlington*, 548 U.S. at 68). As the Supreme Court elaborated in *Burlington*,

> We speak of material adversity because we believe it is important to separate significant from trivial harms. Title VII, we have said, does not set forth a general civility code for the American workplace.
>
> \*\*\*
>
> We refer to reactions of a reasonable employee because we believe that the provision's standard for judging harm must be objective. An objective standard is judicially administrable. It avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings.

*Burlington*, 548 U.S. at 68–70 (internal citations and quotation marks omitted). "An adverse action need not affect the terms and conditions of employment. However, there must be "some direct or indirect impact on an individual's employment as opposed to harms immaterially related to it.'" *Barnes v. Charles Cnty. Pub. Sch.*, 747 F. App'x 115, 119 (4th Cir. 2018) (internal citation omitted) (quoting *Adams v. Anne Arundel Cty. Pub. Schs.*, 789 F.3d 422, 431 (4th Cir. 2015)).

To establish a causal connection in a Title VII retaliation claim, a plaintiff must show that the employer took the materially adverse action "*because* the plaintiff engaged in a protected activity." *Perkins*, 936 F.3d at 214 (quoting *Dowe v. Total Action Against Poverty*, 145 F.3d 653, 657 (4th Cir. 1998) (emphasis in original)). The Fourth Circuit has made clear that "establishing a 'causal relationship' at the *prima facie* stage is not an onerous burden." *Strothers v. City of Laurel*, 985 F.3d 317, 335 (4th Cir. 2018) (citations omitted). A *prima facie* showing of causation requires that a plaintiff establish "(1) the employer either understood or should have understood the

14

employee to be engaged in protected activity[;] and (2) the employer took adverse action against the employee soon after becoming aware of such activity." *Id.* at 336 (citations omitted). However, at the pretext stage of the *McDonnell Douglas* burden-shifting framework, a plaintiff must establish but-for causation. *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 251–52 (4th Cir. 2015) ("[T]he *McDonnell Douglas* framework has long demanded proof at the pretext stage that retaliation was a but-for cause of a challenged adverse employment action."). "If the employer takes the action 'shortly after' learning about the protected activity, courts may infer a causal connection between the two." *Cepada v. Bd. of Educ. of Baltimore Cnty.*, 974 F. Supp. 2d 772, 788 (D. Md. 2013).

Plaintiff argues that she was retaliated against for filing her EEOC claim when Defendant failed to pay her for teaching a summer course and "refus[ed]" to provide her "with her faculty activity report needed to apply for a promotion to the position of Associate Professor." (ECF No. 46 at 16). Plaintiff also argues that she was retaliated against for meeting with Dr. Lewis in November 2017. *Id.* at 17. In response to that protected activity, Plaintiff states she was rejected for an accommodation, forced to teach a nutrition class, denied funding for a training, and "docked" four hours of pay all in February and March of 2018. *Id.* Defendant plainly contends that "Plaintiff has not established that any…incidents resulted in any meaningful injury or harm, and therefore they do not constitute adverse actions." (ECF No. 43, Ex. 1 at 13). Plaintiff relies on the "record of evidence" and Defendant avers that Plaintiff has failed to point to any evidence. The Court agrees with Defendant's assertion, and finds that Plaintiff has failed to substantiate the occurrence of these actions, let alone any adversity caused by same.

Even viewed in the light most favorable to Plaintiff as the non-moving party, she must still present evidence to substantiate her claims. *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 215 (4th Cir.

2019) ("We are required to and do consider the evidence in the light most favorable to [Plaintiff]. But [Plaintiff] must, in the end, offer some evidence to support the essential elements of h[er] claim."). Where a Plaintiff has failed to substantiate her claims with evidence, it is the role of the Court to "to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck Rental, Inc.*, 962 F. Supp. 2d 792, 799–800 (D. Md. 2013).

  First, Plaintiff has failed to provide evidence to substantiate her claim that she was paid late for teaching a summer course in retaliation for filing her EEOC claim, thereby falling short of showing she suffered from an adverse action. Plaintiff's "record of evidence" includes her own deposition transcript, her own answers to interrogatories, and her own emails. Plaintiff's evidence falls short. As previously discussed, late payment may constitute an adverse action. *See Spearman v. City of Annapolis*, No. CV JKB-21-1779, 2022 WL 316641, at *7 (D. Md. Feb. 1, 2022) ("withholding of Plaintiff's pay is an adverse employment action"). However, as to this particular instance, only Plaintiff's deposition transcript is relevant – the remaining "record of evidence" predates the alleged belated payment. Plaintiff's transcript only generally asserts that she was paid one month late and provides no details. (ECF No. 46, Ex. 1 at 35). Such broad assertion alone cannot substantiate her claim. Plaintiff could have provided pay stubs, interviews from the payroll department, patterns of previous payment, the separate summer course contract, or even more details in her own deposition, among countless other possibilities. Instead, Plaintiff opted to unsuccessfully rely on her own brief statement made during a deposition. Even if the Court found that Plaintiff submitted evidence to substantiate that she was paid late, she has failed to provide any evidence or argument as to how this delay resulted in meaningful harm or injury. *See Medlock v. Rumsfeld*, 336 F. Supp. 2d 452, 466 (D. Md. 2002), *aff'd*, 86 F. App'x 665 (4th Cir. 2004) ("This hypothetical assertion is insufficient to satisfy the requirement that Plaintiff actually suffered an

16

adverse impact on the terms, conditions, or benefits of his employment."). Without more, Plaintiff's lack of evidence hinders her ability to prove that a reasonable worker would be dissuaded from filing a charge of discrimination based on such alleged act. At this stage, Plaintiff's evidence, or lack thereof, is not enough for a prima facie case of retaliation.

Second, according to Plaintiff's own documents, the alleged "refusal" to provide Plaintiff with her faculty activity report preceded the EEOC claim and the meeting with Dr. Lewis, thereby precluding a causal connection. According to Plaintiff's emails, she requested the relevant paperwork on October 9, 2017, and then made Dr. Lewis first aware of the situation on November 27, 2017. (ECF No. 46, Ex. 3). To the extent that Plaintiff's argument actually focuses on the alleged denial of paperwork in August 2018, there is no evidence substantiating that claim or timeline. (ECF No. 46 at 6). Further, even if Plaintiff's allegations were accepted as true, she has failed to prove a causal connection between the withholding of paperwork and a protected activity. Instead, Plaintiff summarily states that she was retaliated against for filing her Charge of Discrimination with the EEOC. Without more, this bald assertion falls far short of proving that Plaintiff's paperwork was withheld in August 2018 as a result of her EEOC claim made in April 2018; simply referencing the four-month timespan between these instances does not establish causal connection.

Third, and as discussed *supra*, Plaintiff has failed to prove her request to teach a nutrition class, denial for funding to attend a training, and hours of sick leave docked constituted materially adverse actions, let alone that such actions were causally linked to her meeting with Dr. Lewis in November 2017.

Ultimately, there exists no genuine dispute as to material fact and Defendant is entitled to summary judgment as a matter of law as to Count II of Plaintiff's Complaint.

## IV. CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment (ECF No. 43) is **GRANTED**.

A separate Order follows.

July 14, 2022 /s/
Date J. Mark Coulson
United States Magistrate Judge